J-A03040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DENAYA DAVIS | |
| Appellee | No. 446 EDA 2015 |

Appeal from the Order March 4, 2014
In the Court of Common Pleas of Municipal Court of Philadelphia
At No(s): MC-51-CR-0031625-2013

BEFORE:  GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED MARCH 30, 2016**

Appellant, the Commonwealth of Pennsylvania, appeals from the order of the Philadelphia County Court of Common Pleas, which affirmed the suppression order entered in the Municipal Court in favor of Appellee, Denaya Davis.  We reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. At around 8:40 p.m. on August 14, 2013, Mattie Scott was driving westbound on Larchwood Avenue when she approached the intersection at 61st Street, which had a four-way stop sign.  Ms. Scott stopped at the intersection.  As Ms. Scott started to make a left turn, Appellee drove through the intersection eastbound on Larchwood Avenue without stopping. Ms. Scott's vehicle struck Appellee's vehicle.  Appellee exited her vehicle and began to jump up and down, screaming that Ms. Scott had hit and damaged

Appellee's car. Ms. Scott's car was damaged beyond repair. Minutes later, Officer Nicholson arrived at the scene in response to a radio call. The officer first spoke to Ms. Scott and inquired if she needed medical attention. Witnesses to the accident then pointed Officer Nicholson to a van approximately thirty feet away. Appellee was sitting in the passenger seat of the van. Officer Nicholson approached the van and asked Appellee if she needed medical attention. Appellee said she was fine and would go to the hospital on her own. Officer Nicholson then asked Appellee to exit the van so he could view her driver's license, registration, and proof of insurance for his accident report. As he spoke to Appellee, Officer Nicholson noticed she would stare off into space or not answer some of his questions. Appellee also had glassy eyes and slurred speech. Based on his observations of Appellee's condition, Officer Nicholson asked if she had been drinking and insisted she receive medical attention. As Officer Nicholson continued to talk to Appellee, he detected a strong odor of alcohol on her breath. Appellee finally admitted she had attended a happy hour event where she drank three shots of liquor and a beer. Officer Nicholson then called for a police wagon, and Appellee was placed under arrest and subjected to a breath test.

The Commonwealth charged Appellee with one (1) count of driving under influence of alcohol ("DUI"), 75 Pa.C.S.A. § 3802(a)(1). Appellee filed a motion to suppress all evidence gathered following Officer Nicholson's "stop" of Appellee. On October 24, 2013, the Municipal Court held a hearing

and granted Appellee's motion to suppress. The Commonwealth timely appealed to the Court of Common Pleas ("CCP") on November 22, 2013. On March 4, 2014, the CCP affirmed the suppression order. On April 3, 2014, the Commonwealth timely filed a notice of appeal and a voluntary concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).[1]

The Commonwealth raises the following issue for our review:

> DID THE [CCP], SITTING AS AN APPELLATE COURT, ERR IN AFFIRMING THE SUPPRESSION ORDER OF THE MUNICIPAL COURT, WHICH ERRONEOUSLY HELD THAT [APPELLEE] HAD BEEN PLACED UNDER SUPPOSED ARREST WITHOUT PROBABLE CAUSE BECAUSE A POLICE OFFICER INVESTIGATING A CAR ACCIDENT IN WHICH [APPELLEE] HAD BEEN INVOLVED AS A DRIVER SPOKE TO [APPELLEE] AND ASKED FOR HER LICENSE AND REGISTRATION?

(Commonwealth's Brief at 4).

The Commonwealth argues Officer Nicholson's initial interaction with Appellee required no suspicion of criminal activity. The Commonwealth contends Officer Nicholson lawfully approached and questioned Appellee as part of the officer's duty to render aid in the aftermath of the accident. The Commonwealth claims Officer Nicholson approached Appellee to determine if she needed medical attention, not to investigate a crime. The Commonwealth asserts Officer Nicholson initially was concerned that Appellee had suffered a traumatic brain injury because she had glassy eyes

---

[1] The Commonwealth certified that the suppression order terminated or substantially handicapped the prosecution, pursuant to Pa.R.A.P. 311(d).

and did not promptly respond to the officer's questions. The Commonwealth submits Officer Nicholson then observed other signs indicating that Appellee had been drinking, including slurred speech and the odor of alcohol on her breath. The Commonwealth maintains Appellee admitted she had consumed several alcoholic beverages. The Commonwealth contends Officer Nicholson had probable cause to arrest Appellee at that point. The Commonwealth disputes the CCP's finding that a seizure or arrest occurred at any time before Appellee was placed in the police vehicle. The Commonwealth asserts Officer Nicholson had reasonable suspicion to conduct an investigative detention, in any event, because Appellee had wandered away from the accident scene, and it was clear one or both drivers had disregarded a stop sign and caused a severe collision. The Commonwealth concludes this Court should reverse the suppression order and remand for further proceedings. We agree.

We review an order granting a motion to suppress according to the following principles:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. As long as there is some evidence to support them, we are bound by the suppression court's findings of fact. Most importantly, we are not at liberty to reject a finding of fact which is based on credibility.
>
> The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law

- 4 -

to the facts.

***Commonwealth v. Goldsborough***, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (internal citations and quotation marks omitted).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Bryant***, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005). To determine if an interaction rises to the level of an investigative detention, *i.e.*, a ***Terry***[2] stop, "the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." ***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (quoting ***Commonwealth v. Stevenson***, 832 A.2d 1123, 1127 (Pa.Super. 2003)). ***See also Commonwealth v. Conte***, 931 A.2d 690, 691, 693 (Pa.Super. 2007) (characterizing as "mere encounter"

_____

[2] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

initial interaction between officer and defendant, where officer pulled up behind defendant's disabled vehicle on side of road, activated patrol car's overhead lights, walked toward defendant, and asked him what had happened and if he needed assistance; stating "our expectation as a society is that a police officer's duty to serve and protect the community he…patrols extends beyond enforcement of the Crimes Code or Motor Vehicle Code and includes helping citizens evidently in distress").

Police must have reasonable suspicion that a person is engaged in unlawful activity before subjecting that person to an investigative detention. *Commonwealth v. Cottman*, 764 A.2d 595 (Pa.Super. 2000).

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Basinger*, 982 A.2d 121, 125 (Pa.Super. 2009) (internal citations and quotation marks omitted).

"Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances.'" *Commonwealth v. Banks*, 540 Pa. 453,

455, 658 A.2d 752, 752 (1995).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity.

*Commonwealth v. Rosha Charles Williams*, 2 A.3d 611, 616 (Pa.Super. 2010) (*en banc*), *appeal denied*, 610 Pa. 585, 19 A.3d 1051 (2011) (quoting *Commonwealth v. Thompson*, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009)) (internal citations and quotation marks omitted) (emphasis in original). "Furthermore, a police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated." *Commonwealth v. Hope L. Williams*, 941 A.2d 14, 27 (Pa.Super. 2008) (*en banc*). *See also Commonwealth v. Funk*, 385 A.2d 995 (Pa.Super. 1978) (*en banc*) (stating police had probable cause to arrest defendant on suspicion of DUI where defendant had been in serious car accident, his breath reeked of alcohol, and he was in stupor consistent with either intoxication or concussion).

Instantly, Appellee was involved in a car accident in the middle of a four-way stop intersection. The accident caused significant damage to the vehicles involved. Officer Nicholson arrived at the scene in response to a radio call. After speaking to the other driver, Officer Nicholson walked

toward Appellee, whom witnesses indicated was sitting in a van parked approximately thirty feet away. Officer Nicholson asked Appellee if she needed medical assistance. The initial interaction between Officer Nicholson and Appellee required no particular level of suspicion.[3] Officer Nicholson was simply fulfilling his duty to render aid to a driver he had reason to believe was in distress. **See Conte, supra**; **Bryant, supra**. Additionally, Officer Nicholson's request for Appellee's license, registration, and proof of insurance, was in furtherance of the officer's duty to create an accident report and did not trigger an investigative detention of Appellee. **See** 75 Pa.C.S.A. § 3744(a) (stating: "The driver of any vehicle involved in an accident resulting in…damage to any vehicle or other property which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, and shall upon request exhibit his driver's license and information relating to financial responsibility to…any police officer at the scene of the accident or who is investigating the accident"); 75 Pa.C.S.A. § 3746(c) (stating: "Every accident reported to a police department required in this section shall be investigated by a police officer who shall provide each driver a signed statement that the accident was reported").

_____

[3] Contrary to the CCP's determination, no police-initiated traffic stop occurred. Appellee's vehicle was stopped by the collision itself, and Appellee was sitting in another vehicle when Officer Nicholson approached her.

As Officer Nicholson continued his interaction with Appellee, he observed she had glassy eyes, slurred speech, and would stare off into space or fail to respond to certain questions. When Officer Nicholson asked Appellee if she had been drinking, the officer had reasonable suspicion Appellee was intoxicated, based on the nature of the accident and his observations of Appellee's behavior and appearance. *See Basinger, supra*. The officer noticed an odor of alcohol on Appellee's breath, and Appellee admitted she had consumed several alcoholic drinks.[4] Officer Nicholson **then** placed Appellee under arrest. At that point, the police had probable cause to arrest Appellee on suspicion of DUI based on the totality of the circumstances, including (1) the occurrence of a motor vehicle collision in the middle of a four-way stop intersection, which suggested at least one driver was at fault; (2) Appellee's act of wandering away from the accident and entering a different vehicle on the side of the road; (3) Officer Nicholson's observations of Appellee's demeanor and physical symptoms; and (4) Appellee's admission that she had been drinking alcohol. Officer Nicholson did not have to rule out definitively every other possible explanation for Appellee's behavior and condition, such as a brain injury, to establish probable cause. *See Rosha Charles Williams, supra*; *Funk,*

---

[4] Although unchallenged in this case, Appellant was not "in custody," when she admitted she had consumed several alcoholic drinks, for purposes of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See generally Hope L. Williams, supra*.

*supra*. Accordingly, we reverse the order affirming suppression and remand the case for further proceedings.

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2016